James H. Cordes (#175398)
Angelica J. Caro (#318821)
James H. Cordes and Associates
831 State Street, Suite 205
Santa Barbara, CA 93101
Telephone: (805) 965-6800
Facsimile: (805) 965-5556

Attorney for Plaintiff
ARTHUR DENHAM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

ARTHUR DENHAM, an individual,

Plaintiff,

vs.

WEATHERFORD U.S. L.P., a limited partnership, and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:23-cv-04045-RGK-JCx

**PLAINTIFF ARTHUR DENHAM'S OPPOSITION TO DEFENDANT WEATHERFORD U.S., L.P.'S MOTION TO COMPEL ARBITRATION**

[Filed concurrently with the Declaration of Angelica J. Caro and Arthur Denham]

Judge: R. Gary Klausner
Hearing: July 17, 2023
Time: 9:00 a.m.
Ctrm: 850, 8th Floor

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . 5

II. STATEMENT OF FACTS . . . . . . . . . . 6

III. ARGUMENT . . . . . . . . . . 7

A. Mr. Denham Did Not Agree to Arbitrate His Claims. . . . . . . . . . 8

B. The Handbook and the DRP are Separate Documents. . . . . . . . . . 9

C. Weatherford Has Not Shown Implied Consent Based on Mr. Denham's Continued Employment. . . . . . . . . . 9

D. The DRP is Both Procedurally and Substantively Unconscionable. 11

1. The DRP is Procedurally Unconscionable. . . . . . . . . . 11

2. The DRP is Substantively Unconscionable. . . . . . . . . . 13

3. The Court Cannot Enforce The DRP Under Armendariz. . . . 14

IV. CONCLUSION . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Federal Cases**


*AT&T Mobility LLC v Concepcion*
131 S. Ct. 1740, 1746 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*AT&T Techs. v. Communs. Workers of Am.*
475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986) . . . 7

*Berman v. Freedom Fin. Network, LLC*,
No. 18-CV-01060-YGR, 2020 WL 5210912, at *1 (N.D. Cal. Sept. 1, 2020) 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc*.,
207 F.3d 1126, 1130 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*First Options of Chi., Inc. v. Kaplan*
514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) . . . . . . . . . . 7

*Nguyen v. Barnes & Noble Inc.*
763 F.3d 1171, 1175 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


**California Cases**


*Armendariz v. Foundation Health Psychcare Services Inc*.
24 Cal.4th 83, 114-15 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Davis v. Kozak*
53 Cal. App.5th 897, 912 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Diaz v. Sohnen Enterprises*
34 Cal.App.5th 126 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Esparza v. Sand & Sea, Inc.*
2 Cal.App.5th 781, 789 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fitz v. NCR Corp*
118 Cal.App.4th 702, 721 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc*.
232 Cal.App.4th 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*HM DG, Inc. v. Amini,*
219 Cal.App.4th 1100, 1109 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kinney v. United HealthCare Services, Inc.*,
70 Cal.App.4th 1322, 1329 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mercuro v. Superior Court*,
96 Cal.App.4th 167, 174 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mitri v. Arnel Mgmt. Co.*
157 Cal.App.4th 1164, 1173 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nvulassy v. Lockheed Martin Corp.*,
120 Cal.App.4th 1267, 1288 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*OTO, L.L.C. v. Kho,*
8 Cal.5th at 126, 130 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*Samaniego v. Empire Today LLC*,
205 Cal.App.4th 138, 150 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stirlen v. Supercuts, Inc.*,
51 Cal.App.4th 1519, 1532 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Trivedi v. Curexo Tech. Corp.*,
189 Cal.App.4th 387, 393 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Windsor Mills, Inc. v. Collins & Aikman Corp.,*
25 Cal.App.3d 987, 993 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARTHUR DENHAM ("Plaintiff" or "Mr. Denham") respectfully submits this Memorandum of Points and Authorities in opposition to Defendant WEATHERFORD U.S. L.P.'s ("Defendant" or "Weatherford") Motion to Compel Arbitration.

## I.

## INTRODUCTION

Defendant has moved to compel arbitration based on a contract that Plaintiff had no sufficient notice of and did not agree to. The evidence provided by Defendant is insufficient to show that there was a binding arbitration agreement. First, the alleged acknowledgment of receipt of Weatherford's 2017 Employee Handbook ("Handbook") attached as Exhibit C to the declaration of Melanie Portra ("Portra Decl.") does not show Mr. Denham's signature or acknowledgment. (Doc.10-4). Rather, the exhibit only shows that the Handbook was "Completed." Second, the Handbook attached as Exhibit D to theapp://resources/notifications.html# Portra declaration does not have the acknowledgment of receipt form that Mr. Denham would have viewed. (Doc. 10-5.) Third, the Dispute Resolution Program ("DRP") document itself was accessible only through Defendant's website with no hyperlink was provided in the notification email or the Handbook. Fourth, to the extent Mr. Denham clicked anything, it was for the review of the Handbook, not acknowledgment of receipt or agreement to arbitrate his claims. Exhibit B shows that acknowledgment of the Handbook was going to be sent in a separate email. (Doc. 10-3.) Fifth, even assuming Mr. Denham signed the acknowledgment of receipt form (found on page 38 of the Handbook), he did not manifest his consent to be bound to the DRP because the acknowledgment did not put him on notice of the DRP much less advise that he would be bound by it. Sixth, the Handbook acknowledgment on page 38 suggests that the Handbook is informational rather than contractual. (2017 Employee Handbook at 38, attached as Exhibit A to the Declaration of Angelica J.

Caro “Caro Decl.”).)

As set forth below, there is no evidence of what Mr. Denham acknowledged if anything and no evidence demonstrating that Mr. Denham assented to arbitration. To the contrary, Mr. Denham repeatedly declares he had no information about any arbitration agreement imposed by Defendant. The Court should deny Defendant’s Motion to Compel Arbitration.

## II.

## STATEMENT OF FACTS

Mr. Denham was hired by Defendant as a Service Technician III- Fishing Tool Supervisor from on or about July, 2015 to on or about June 20, 2022. (Declaration of Arthur Denham (“Denham Decl.”), ¶ 2.) Mr. Denham does not recall receiving Weatherford’s 2017 Employee Handbook. (Denham Decl. ¶ 3.) Mr. Denham has no specific recollection of reviewing an employee handbook. (Denham Decl. ¶ 4.) Nobody told Mr. Denham that there was an arbitration agreement in the handbook or explain to him that he was giving up his rights to a jury trial. (Denham Decl. ¶ 5.) No body expressly notified Mr. Denham that agreeing to arbitrate was a condition of employment. (Denham Decl. ¶ 6.) Mr. Denham was not given an opportunity to ask questions and was not told that he could consult an attorney prior to signing any documents. (Denham Decl. ¶ 7.) Mr. Denham was not given a copy of DRP or any rules that purport to govern the DRP. (Denham Decl. ¶ 8.) Mr. Denham did not visit Weatherford’s website to review the Dispute Resolution Plan. (Denham Decl. ¶ 9.) Mr. Denham was not in a position to refuse employment because of the arbitration agreement. (Denham Decl. ¶ 10.) Mr. Denham does not recall receiving notice on January 14, 2021 of the revisions to the Dispute Resolution Plan. (Denham Decl. ¶ 11.) Mr. Denham did not access his work email daily. (Denham Decl. ¶ 12.)

At no time during his employment was Mr. Denham ever provided a copy of the Dispute Resolution Plan. (Denham Decl. ¶ 13.) It was not until after Plaintiff was fired and hired a lawyer who made a claim against Weatherford that Plaintiff was informed that Weatherford was taking the position Plaintiff had agreed to arbitration. (Denham Decl. ¶ 14.) Now, after reading the Dispute Resolution Plan, Mr. Denham does not understand the agreement or its terms. (Denham Decl. ¶ 15.)

## III.

## ARGUMENT

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."(*AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986).) A court deciding whether to compel arbitration must first determine: (1) "whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." (*Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).) "If the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply." (*Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912, at *1 (N.D. Cal. Sept. 1, 2020) (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).) (emphasis in original).

The Federal Arbitration Act ("FAA") looks to state law to determine the validity of an agreement to arbitrate. To determine whether an agreement exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" (*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).)

**A. Mr. Denham Did Not Agree to Arbitrate His Claims.**

“““”Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.“““” (*HM DG, Inc. v. Amini,* 219 Cal.App.4th 1100, 1109 (2013).) In applying this objective standard, outward manifestations of a party’s supposed assent are to be judged with due regard for the context in which they arise. California law is clear – “an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.” (*Windsor Mills, Inc. v. Collins & Aikman Corp.,* 25 Cal.App.3d 987, 993 (1972).)

Here, Exhibit B shows that Defendant provided a link to view the Handbook and provided that the acknowledgment of the Handbook was going to be sent in a separate email. (Doc. 10-3.) Defendant has not provided evidence showing that a separate email was sent to Mr. Denham or that Mr. Denham signed it. Exhibit C to the Portra declaration does not show Mr. Denham’s signature or acknowledgment of receipt. (Doc.10-4). Rather, the exhibit only shows that the Handbook was “Completed.” It is unclear what was “Completed.” Exhibit D to the Portra declaration does not have the acknowledgment of receipt form that Mr. Denham would have viewed. (Doc. 10-5.) Assuming the acknowledgment of receipt form that Mr. Denham would have viewed is page 38 of the Handbook, the acknowledgment states that the Handbook is informational rather than contractual. It provides: “I also acknowledge and understand that the handbook serves as a guideline, is not all-inclusive, IS NOT A CONTRACT OF EMPLOYMENT, supersedes any previous handbook material; and provisions herein may be amended at management's sole discretion at any time without prior notice to me.” (2017 Employee Handbook at 38, attached as Exhibit A to Caro Decl.) (emphasis in original) Notably, the Handbook acknowledgment itself does not state that Mr.

Denham is agreeing to arbitrate disputes or that acceptance is a condition of employment.

In *Esparza v. Sand & Sea, Inc.* 2 Cal.App.5th 781, 789 (2016), the plaintiff was given an employee handbook on her first day of work. The handbook contained a similar express disclaimer of contract, stating *inter alia*, "this handbook is not intended to be a contract (express or implied), nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees." (*Id.* at 784, italics omitted). This disclaimer prevented the creation of an enforceable agreement to arbitrate. (*Id*. at 789.)

Here, the contractual disclaimers compel a result similar to *Esparza.*

**B. The Handbook and the DRP are Separate Documents.**

The Portra declaration attaches the DRP as Exhibit A and attaches the Handbook as Exhibit D. These documents are two separate and severable agreements: (1) an agreement to be familiar with the Handbook and abide to the conditions of employment (which makes no mention of arbitration in the acknowledgment form); and (2) an agreement to arbitrate claims. The Handbook refers to the DRP but does not contain the DRP. The DRP itself has no indication as to how an employee would manifest assent to the agreement. The Handbook acknowledgment, even assuming it was executed by Mr. Denham, indicates he reviewed it and abides to employment policies, nothing else. Merely agreeing to abide by the policies set forth in the Handbook is not agreeing to arbitrate claims under the terms of a separate document.

**C. Weatherford Has Not Shown Implied Consent Based on Mr. Denham's Continued Employment.**

Defendant has not shown that an implied-in-fact agreement to arbitrate exists based upon Mr. Denham's continued employment after sending notice of revisions to the DRP via email on January 14, 2021 ("Notice") because there is no evidence that Mr. Denham ever knew that the company purported to require him to

arbitrate his claims.

Defendant's reliance on *Diaz v. Sohnen Enterprises*, 34 Cal.App.5th 126 (2019), is misplaced because the parties in that case did not dispute that the employee was notified that binding arbitration was a condition of employment and nevertheless continued working. (*See Diaz v. Sohnen Enterprises*, *supra*, 34 Cal.App.5th ("when an employee continues his or her employment ***after notification that an agreement to arbitration is a condition of continued employment***, that employee has impliedly consented to the arbitration agreement," emphasis added.).)

*Diaz* stressed that notification of that condition of employment is critical for finding of such implied consent. The court emphasized that the parties in that case did not dispute that the plaintiff was notified that her employer was adopting a new dispute resolution policy requiring arbitration of all claims, that employees needed to sign the arbitration agreement, and that continued employment by an employee who refused to sign the agreement would itself constitute acceptance of the dispute resolution agreement. (*Id*. at 128.) The court distinguished a similar case, *Mitri v. Arnel Mgmt. Co.* 157 Cal.App.4th 1164, 1173 (2007), in which the Mitri plaintiff only acknowledged receipt of an employee handbook containing an arbitration provision, but the acknowledgement form did not reference or contain any agreement to comply with the arbitration provision. (*Id*. at 130.) The court observed, "[t]he general acknowledgment [in Mitri] stands in distinction to the express explanation provided twice to Diaz: that continued employment would itself be a manifestation of agreement to the arbitration provisions." (*Id*.) In other words, the plaintiff in *Diaz* indisputably had notice that agreement to arbitrate was a condition of employment, whereas the plaintiff in *Mitri* was not provided such notice. Here, Mr. Denham, like the plaintiff in *Mitri*, had no notice that the employer would interpret his "acknowledgment" of a handbook was tantamount to an "agreement" to arbitrate.

Mr. Denham does not recall receiving Notice of revisions to the DRP via email. (Denham Decl. ¶ 11.) Mr. Denham did not access his email daily. (Denham Decl. ¶ 12.) Mr. Denham was not expressly notified that agreeing to arbitrate was a condition of employment with Defendant. (Denham Decl. ¶ 6.) Further, the Notice required that Mr. Denham complete acknowledgment via a separate link. (Doc.10-6.) Defendant has not produced such an acknowledgment.

**D. The DRP is Both Procedurally and Substantively Unconscionable.**

If the Court finds that Mr. Denham is bound by the DRP, the DRP is unenforceable because it is unconscionable.

Although federal policy liberally favors arbitration under the FAA, unconscionability remains a viable basis to render an arbitration agreement unenforceable under both the FAA and CAA. (*Samaniego v. Empire Today LLC*, 205 Cal.App.4th 138, 150 (2012).) In fact the United States Supreme Court reaffirmed the FAA "permits agreements to be invalidated by "generally applicable contract defense, such as fraud, duress, or unconscionability." (*Id.*; *AT&T Mobility LLC v Concepcion*, 131 S. Ct. 1740, 1746 (2011).)

***1. The DRP is Procedurally Unconscionable.***

Procedural unconscionability turns on adhesiveness -- a set of circumstances in which the weaker or 'adhering' party is presented a contract drafted by the stronger party on a take it or leave it basis." (*Mercuro v. Superior Court*, 96 Cal.App.4th 167, 174 (2002).) When an employee is required to consent to arbitration as a condition of employment with no opportunity to negotiate, the agreement is procedurally unconscionable. (*Armendariz v. Foundation Health Psychcare Services Inc*., 24 Cal.4th 83, 114-15 (2000) ("*Armendariz*").)

The court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time." (*Kinney v. United HealthCare Services, Inc.*, 70 Cal.App.4th 1322, 1329 (1999).) A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party

from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. (*Stirlen v. Supercuts, Inc*., 51 Cal.App.4th 1519, 1532 (1997).) "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" (*OTO, L.L.C. v. Kho,* 8 Cal.5th at 126, 130 (2019)("*OTO*"), quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc*. 232 Cal.App.4th 1332, 1348 (2015).) Relevant pressure may include the economic pressure on an employee to accept a contractual provision as a condition of keeping a job; as this pressure may be substantial, courts must be particularly attuned to the danger of oppression in the "posthiring" setting. (*OTO*, *supra*, 8 Cal.5th at 127; *see also Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc*., *supra*, 232 Cal.App.4th at 1348, fn. 10, (relevant pressure may be generated by market conditions or other circumstances surrounding the contract's formation).) Surprise may be found where "the agreement appears to have been drafted with an aim to thwart, rather than promote, understanding," undermining the nondrafting party's informed consent. (*OTO*, *supra*, 8 Cal.5th at p. 129.) An agreement may thwart understanding by hiding the challenged provision, or by using language -- for example, complex sentences filled with legal jargon -- rendering the substance of the challenged provision opaque. (*See id*. at 128.)

Furthermore, California courts have invalidated arbitration agreements where the employee had not received the rules which govern the arbitration. In *Fitz v. NCR Corp*, 118 Cal.App.4th 702 (2004), the court did not enforce an arbitration agreement that incorporated AAA rules without attaching them, finding that this required the employees "to go to another source to learn the full

ramifications of the arbitration agreement." (*Id*. at 721.)

In this case, the DRP that Defendant is attempting to enforce is an adhesion contract. Assuming Mr. Denham received and "agreed" to the DRP, it was oppressive. Mr. Denham was given a Handbook to sign as a condition of his continued employment with Defendant. Mr. Denham was not in a position to refuse his job because of the arbitration agreement. (Denham Decl. ¶ 10.) Mr. Denham was not given an opportunity to ask questions and was not told that he could consult an attorney prior to signing any documents. (Denham Decl. ¶ 7.) Mr. Denham was not given a copy of DRP or any rules that purport to govern the DRP. (Denham Decl. ¶ 8.) The DRP itself was accessible only through Defendant's website and no hyperlink was provided in the notification email or the Handbook. The Handbook provided: "For more information about the DRP, please contact the Ombuds or visit Weatherford's website to review digital brochures and the DRP Plan and Rules in detail." (Doc. 10-5 at 27.) Mr. Denham was unable to determine what rights he was giving up and what arbitration scheme he was accepting instead. Further, the DRP provision is not highlighted in a table of contents of the Handbook and did not stand out from the other sections of the Handbook. (Caro Decl. ¶ 5.) Still further, the DRP itself is unclear and the sentences are complex, filled with statutory references, and legal jargon. The DRP is titled "WEATHERFORD DISPUTE RESOLUTION NOTICE." The DRP does not expressly state that it is an arbitration agreement or that agreeing to DRP is a condition of employment. After reading the Dispute Resolution Plan in connection with this Motion, Mr. Denham does not understand the agreement or it terms. (Denham Decl. ¶ 15.)

Therefore, this Court should find the agreement procedurally unconscionable.

***2. The DRP is Substantively Unconscionable.***

Under California's "sliding scale" approach, the high degree of procedural

unconscionability means that only a “relatively low” showing of substantive unconscionability is required. (*OTO*, *supra*, 8 Cal.5th at 130.)

As set forth above, the DRP is permeated with unlawful provisions.

When an arbitration agreement contains more than one unlawful provision, severance of the unlawful provision will not be permitted. (*Nvulassy v. Lockheed Martin Corp*., 120 Cal.App.4th 1267, 1288 (2004).) Indeed, the policy favoring arbitration does not require that the courts sever unlawful provisions, rather than void the entire arbitration agreement. Generally, where there is more than one unconscionable term, the unconscionability permeates the contract and severance is inappropriate. (*Armendariz, supra,* 24 Cal.4th 83, 98 (severance was inappropriate where there was “no single provision a court [could] strike or restrict in order to remove the unconscionable taint from the agreement”); *Trivedi v. Curexo Tech. Corp*., 189 Cal.App.4th 387, 393 (2010) (refusing to sever where two terms were unconscionable).)

***3. The Court Cannot Enforce The DRP Under Armendariz.***

The California Supreme Court in *Armendariz* held that a mandatory employment arbitration agreement is enforceable, despite being procedurally unconscionable, only if it meets the following requirements to be enforceable under California law: (1) require neutral arbitrators; (2) allow for more than minimal discovery; (3) require a written decision by the arbitrator; (4) allow for all types of relief otherwise available in court; and (5) not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration process. (*See Armendariz*, *supra*, 24 Cal.4th at 102.) The Supreme Court in *Armendariz* emphasized that, it is not enough to substantially comply with the *Armendariz* requirements. Rather, in order for a mandatory employment arbitration agreement to be substantively conscionable, all requirements must be met. (*Id*.)

Here, the discovery requirements (i.e, allowing for more than minimal discovery) are not satisfied because the DRP's provision on discovery is restrictive to the arbitrator's discretion. The DRP's section provides: "P. The arbitrator shall have discretion to determine the form, amount and frequency of discovery by the Parties. Q. Discovery may take any form permitted by the Federal Rules of Civil Procedure, as amended from time to time, subject to any restrictions imposed by the arbitrator." (Doc 10-2 at 8.) Such provisions place plaintiff at greater risk than if he had brought his claims in court.

While some limitations on discovery can be an imPortrant way to streamline arbitration, "[a]dequate discovery is indispensable for the vindication of statutory claims." (*Fitz v. NCR Corp*., *supra,*118 Cal.App.4th 702, 721.) Limitations on discovery in arbitration shall not make arbitration so inaccessible that it cannot allow for effective means for resolving party disputes, such that it would impose burdens on an employee that they would be unable to navigate without counsel. (*OTO, supra,* 8 Cal.5th 111, 136.) Even where the arbitrator is granted so called discretion to determine when additional discovery is necessary, it is not enough to fix a discovery provision that is severely restrictive. (*Davis v. Kozak*, 53 Cal. App.5th 897, 912 (2020).)

Thus, the discovery provision of this agreement is substantively unconscionable.

## IV.
## CONCLUSION

For the reasons provided above, Defendant's Motion to Compel Arbitration should be denied in its entirety.

Respectfully submitted this 26th day of June, 2023

James H. Cordes and Associates,

*/s/ Angelica J. Caro*
Angelica J. Caro, Esq.
Attorney for Plaintiff
ARTHUR DENHAM

The undersigned, counsel of record for Plaintiff ARTHUR DENHAM, certifies that this brief contains 3,986 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 16, 2023

James H. Cordes and Associates,

*/s/ Angelica J. Caro*
Angelica J. Caro, Esq.
Attorney for Plaintiff
ARTHUR DENHAM

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused to be served on June 26, 2023, a copy of the foregoing via the Court's CM/ECF system to counsel of record.

*/s/ Angelica J. Caro*
ANGELICA J. CARO